7 F.Supp.2d 1019 (1998)
RYOBI NORTH AMERICA, INC., Plaintiff,
v.
UNION ELECTRIC COMPANY, INC., Defendant.
No. 4:97CV1664 RWS.
United States District Court, E.D. Missouri, Eastern Division.
April 15, 1998.
Kevin M. Cushing, John E. Hilton, Partner, Carmody and Macdonald, St. Louis, Craig C. Reilly, Richards and McGettigan, Alexandria, VA, Ernie L. Brooks, John E. Nemazi, Timothy G. Newman, Brooks and Kushman, Southfield, MI, for Ryobi North America, Inc., plaintiffs.
Kenneth R. Heineman, Managing Partner, Frank B. Janoski, Partner, Thompson Coburn, St. Louis, Robert J. McAughan, John Francis Lynch, Jeffrey L. Garrett, Hugh R. Kress, Arnold and White, Houston, TX, James H. Laughlin, Jr., Bruce O. Jolly, Jr., Washington, DC, for Emerson Electric Company, Inc., defendants.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
This matter is before the Court on Plaintiff Ryobi North America, Inc.'s Motion to Compel the Deposition of Jeffrey L. Garrett and Polster Leider, and Motion to Compel Production of Withheld Documents.

Background
Ryobi of North America, Inc.'s ("Ryobi") Complaint alleges that Emerson Electric Company ("Emerson") is willfully infringing U.S. Patent No. 5,351,590 ("the '590 patent") by making, selling and/or offering for sale toolless blade clamps.
Emerson previously prosecuted a patent application for a toolless blade clamp. Emerson's patent application was abandoned after being rejected by the U.S. Patent & Trademark Office on the basis that Emerson's application was anticipated by U.S. Patent *1020 No. 1,659,801 ("the Basmaison patent"). In its defense of this case, Emerson claims that Ryobi's '590 patent is invalid because it too was anticipated by the Basmaison patent.
Although the abandoned Emerson patent is not directly at issue in the case, Ryobi seeks to depose the attorneys who drafted the abandoned Emerson patent application. Ryobi also seeks the production of all documents relating to the prosecution of the Emerson patent application. Emerson has represented to Ryobi and the Court that it has produced all substantive communications between Emerson and the U.S. Patent & Trademark Office. Emerson has objected to the production of the remaining documents by asserting the attorney-client privilege.

Attorney-client privilege
A communication is protected from disclosure by the attorney-client privilege if:
(1) the asserted holder of the privilege is, or sought to become, a client;
(2) the person to whom the communication was made
(a) is a member of the bar of a court, or his subordinate and
(b) in connection with this communication is acting as a lawyer;
(3) the communication relates to a fact of which the attorney was informed
(a) by his client
(b) without the presence of strangers
(c) for the purpose of securing primarily either
(i) an opinion on law or
(ii) legal services or
(iii) assistance in some legal proceeding, and not
(d) for the purpose of committing a crime or tort; and
(4) the privilege has been
(a) claimed and
(b) not waived by client.
Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 601-601 (8th Cir.1977).
The party asserting the privilege has the burden of showing that the communication meets the requirements for the privilege. Id., at 609.
Ryobi has not challenged Emerson's designation of the documents as attorney-client communications. Rather, Ryobi argues that an attorney's opinion "work product" may be discoverable where the information is directly at issue and the need is compelling. Additionally, Ryobi argues that disclosure of attorney-client communications is permitted in the patent application process where the attorney is merely acting as a conduit for information and not acting primarily as a lawyer.

Motion to Compel Depositions
In support of its motion to compel the deposition testimony of Emerson patent counsel, Ryobi relies primarily on the case Bio-Rad Laboratories, Inc. v. Pharmacia, Inc. et. al., 130 F.R.D. 116 (N.D.Cal.1990) (hereinafter sometimes referred to as Bio-Rad) as support for its argument that patent counsel's testimony is not protected by the attorney-client privilege. Ryobi's reliance on Bio-Rad is misplaced.
In Bio-Rad the objection to the deposition of prior patent counsel was made on the basis of the "work product" doctrine[1] not the attorney-client privilege which is asserted here by Emerson.
The Bio-Rad attorney's testimony was sought because he had been identified as an expert consultant for the trial. As a result the central discovery dispute was whether the "work product" doctrine applied to the testimony not whether the testimony was protected by the attorney-client privilege.
In its decision compelling the testimony of the Bio-Rad patent attorney the court noted that "It is important to this Court's analysis that Bio-Rad voluntarily engaged [the attorney] as expert consultant to trial counsel in *1021 the pretrial preparation." Bio-Rad, 130 F.R.D. at 122. In other words by naming its patent attorney as an expert for trial purposes Bio-Rad exposed the attorney to the discovery process. On that basis the court overruled the "work product" objection to the deposition. None of these factors are present in this case.
The attorney whose testimony was sought in Bio-Rad prosecuted the very patent at issue in that case. Here, Ryobi seeks to depose patent counsel who worked on a collateral patent application not at issue in this case.
Most importantly, neither Ryobi nor Emerson has suggested in their briefs that Emerson's patent counsel was engaged in trial preparation. Rather, it is clear that Emerson's patent counsel, whose depositions are sought here, were engaged to prosecute a collateral patent application. As a result, the work product doctrine is not the issue here. The issue here is the objections to discovery by Emerson based on the attorney-client privilege.
To the extent Bio-Rad addresses the attorney-client privilege the decision is equally unpersuasive because it relies in substantial part on Hewlett-Packard Co. v. Bausch & Lomb, 116 F.R.D. 533 (N.D.Cal.1987). The author of the Hewlett-Packard opinion, United States Magistrate Judge Brazil, essentially repudiated the analysis of the attorney-client privilege contained in Hewlett-Packard in his more recent opinion, Advanced Cardiovascular Systems, Inc. v. C.R. Bard, Inc., 144 F.R.D. 372 (N.D.Cal.1992) (a decision which this Court finds more persuasive). Specifically, in Advanced Cardiovascular Judge Brazil writes that his Hewlett-Packard opinion "reflected no awareness that there was then, and remains today, a clear division of authority on this important issue" of attorney-client privilege in patent cases. In Advanced Cardiovascular Judge Brazil concluded contrary to his decision in Hewlett-Packard that, "... communications from inventor to patent lawyer, even those that are entirely technical, remain presumptively protected by the attorney-client privilege." Id. at 378.
This Court finds Judge Brazil's later views on the attorney client privilege in patent cases far more persuasive. In fact, inventors and their patent counsel often engage in quite substantive private dialogue as part of the process of shaping and focusing a patent application and like any other attorney client relationship it is reasonable for them to expect their dialogue to remain confidential. On that basis such communication is presumptively protected by the attorney-client privilege. This analysis extends even to the organization of technical information. To find otherwise is to oversimplify the patent application process and to demean the patent attorney's role to that of a mere scrivener.
Because Ryobi seeks to compel deposition testimony which is protected by the attorney-client privilege, Ryobi's motion to compel deposition testimony is denied.

Motion to Compel Production of Documents
Emerson has also objected to producing certain documents prepared in the prosecution of the abandoned Emerson patent asserting again the attorney-client privilege. Once again, Ryobi relies heavily on the Bio Rad case to dispute Emerson's claim. The Court's analysis above in the preceding section is equally applicable to the motion to compel the production of documents as it was to the deposition testimony of patent counsel.
If the documents sought by Ryobi were intended to be a confidential communication between Emerson and patent counsel for the purpose of securing legal advice and assistance, then the documents are protected by the attorney client privilege. FMC Corp. v. Old Dominion Brush Company, 229 U.S.P.Q. 150, 152 (W.D.Mo.1985).
Based on the Court's review of Emerson's privilege log and the documents submitted to it for in camera review, privilege log documents numbered 4 through 14 are protected by the attorney client privilege and shall not be produced. Emerson's objection to producing privilege log documents 1 and 2 based on the attorney client privilege is overruled. All documents to be produced pursuant to this Court's Order shall be produced in a *1022 manner consistent with the protective order previously entered in this case.
Accordingly,
IT IS HEREBY ORDERED that Ryobi's Motion to Compel Deposition Testimony of Jeffrey L. Garrett and Polster Leider [# 51] is DENIED.
IT IS FURTHER ORDERED that Ryobi's Motion to Compel Production of Withheld Documents [# 56] is GRANTED, in part, and DENIED, in part. Those documents listed as # 1 and # 2 on Emerson's privilege log are to be produced to Ryobi in a manner consistent with the protective order previously entered in this case.
NOTES
[1] The work product doctrine was established by the Supreme Court in the seminal decision of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and is now codified as Rule 26(b)(3) of the Federal Rules of Civil Procedure. The work product doctrine shields from discovery the disclosure of "mental impressions, opinions, or legal theories of an attorney" formulated in the preparation of cases for trial.